UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

                  Case No. 07-CR-20361-DT-02
                  Hon. VICTORIA A. ROBERTS

vs.


SANAN ATOU,

                                 FILED UNDER SEAL

      Defendant.
_____/

KATHRYN A. MCCARTHY
United States Attorney's Office
211 W. Fort Street
Suite 2001
Detroit, MI 48226-3211
313-226-9100
Email: kathryn.mccarthy@usdoj.gov

SANFORD A. SCHULMAN P-43230
Attorney for Defendant: SANAN ATOU
500 Griswold Street, Suite 2340
Detroit, Michigan 48226
(313) 963-4740
Email: saschulman@comcast.net
_____/

FILED
APR - 1 2008
CLERK'S OFFICE
DETROIT

## DEFENDANT, SANAN ATOU'S SENTENCING MEMORANDUM AND SUPPORTING MATERIALS

      NOW COMES the Defendant, SANAN ATOU, by and through his attorney,

SANFORD A. SCHULMAN, and states in support of his Sentencing

Memorandum as follows:

In <u>United States v. Booker</u>, 543 U.S. 220, 125 S. Ct. 738, 160 L.Ed.2d 621 (2005), the Supreme Court held that the provisions of the Federal Sentencing Reform Act of 1984 were no longer mandatory but "merely advisory." In lieu of the Supreme Court's decision in <u>Booker</u>, courts now must impose "a sentence sufficient, but not greater than necessary to comply with the purposes of 3553 (a)." <u>United States v. Foreman</u>, 436 F.3d 638 n. 1 (6th Cir. 2006).

Pursuant to 18 U.S.C. 3553(a), in determining the imposition of sentence, this Court should consider the following in imposing sentence: The nature and circumstances of the offense; the history and characteristics of the Defendant; the need for the sentence imposed to reflect the seriousness of the offense; to promote respect for the law and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the Defendant; to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the need to avoid unwarranted sentencing disparities among Defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

The directives of <u>Booker</u> and 18 U.S.C. Section 3553(a) make it clear that courts need no longer uncritically apply the guidelines and only depart in "unusual cases" for clearly identified and persuasive reasons. This Court is now allowed to tailor a sentence to fit the above statutory directives and yet be effective and fair.

## Background

Sanan Atou was born on January 23, 1983 in a small village outside of Baghdad in Iraq. In 199, around the time of the Gulf War, his family made the long and harrowing journal that took several years through several countries including a 9-hour trek through the mountains of Turkey to eventually come to the United States. The conditions in Iraq for Sanan and his family were unbearable. His father served in the Iraqi army for almost twenty years and there was considerable discrimination in Iraq and little Governmental protection because Sanan and his family were not Muslim.

It was with this history that Sanan so deeply values the opportunity to be in the United States. His family initially resided in Oak Park, Michigan where Sanan did exceptionally well at elementary school and was in fact moved up an entire grade. Unfortunately, when Sanan became old enough to work in his uncle's store, Sanan began working an average of 9 hours per day for a number of years. Today, Mr. Atou works at his sister's store, Sam's Tailor in Port Huron, Michigan as a tailor. He continues to reside with his mother and father. His father is very ill and his mother's English and health limit her ability to work. It has been the sole responsibility of Sanan, for the most part, to support his parents.

## Arrest, Attempts to Cooperate and Acceptance of Responsibility

On July 22, 2006, Sanan Atou was arrested while attempting to smuggle into the United States from Canada a bag that latter turned out to contain approximately 8,000 MDMA pills. Mr. Atou was released and retained counsel

3

who, based on the desire and intention of Mr. Atou, set up a meeting with the assistant United States Attorney and the agents involved including Jason Gartsu, Special Agent from the Drug Enforcement Administration, Christopher Hudson, Special Agent Department of Homeland Security and Sam Rahi, Special Agent from the Drug Enforcement Administration. (See attached letters from counsel).

Several meetings were held and the defendant, Sanan Atou, was questioned extensively. Several weeks after the last interview the Government filed a Criminal Complaint in Case Number 06-30463 naming Jimis Odish, Jeny Maqi, Wasem Petrus, Maher Siklawi, Daryl Bynum, Alan Ester, Kimberly Hughes, Donzell Williams, Theodore Hoke, and Alexandros Hughes as defendants. It is the defendant's position that the information he provided in the weeks prior substantially assisted the Government in charging many of these individuals either directly or indirectly. Interestingly, Sanan Antou was not named as one of the defendants in the original Complaint. (See attached Criminal Complaint)

It was quite clear during the proffer with the Government that Mr. Atou was apprehensive at disclosing information regarding Wasem Petrus (who, it should be noted, was nonetheless arrested and charged only a few weeks later). Mr. Atou was under tremendous pressure not to disclose details about Mr. Petrus to the Agents. (See attached letter). In fact Mr. Petrus threatened Mr. Atou and Sanan was not only fearful for his own safety but that of his family, his highest priority. The government representative attempted to assure Mr. Atou that he and his family would be adequately protected but Sanan Atou grew up in an environment where the Government inherently failed to protect its citizens. Mr.

Atou also knew that it was he and his family that would continue to reside in the community and that they had far more limited resources than Mr. Petrus.

The defendant recognizes that generally it is in the government's discretion to move for a USSG § 5K1.1 departure and, thus, a defendant cannot challenge the government's refusal to request a section 5K1.1 departure absent specific allegations of unconstitutional motive (e.g., race or religion. United States v. Wade, 504 U.S. 181, 186-87, 118 L. Ed. 2d 524, 112 S. Ct. 1840 (1992).

In a situation where a defendant proffers a claim that the nature or extent of the risk faced during an attempt to cooperate with authorities was so extraordinary as to be beyond the compass of U.S.S.G. § 5K1.1, p.s. Cf. United States v. Romolo, 937 F.2d 20, 24-25 (1st Cir. 1991) (noting that it is "theoretically possible" that unusual circumstances surrounding cooperation attempt might justify departure under section 5K2.0, even in absence of section 5K1.1 motion); United States v. Khan, 920 F.2d 1100, 1106-07 (2d Cir. 1990) (noting same "theoretical possibility"), cert. denied, 499 U.S. 969, 113 L. Ed. 2d 669, 111 S. Ct. 1606 (1991).

Although Sanan Atou was not granted a motion for a downward departure by the Government, it should be noted that he still met with the Government on several occasions, was one of the first to meet with them and was the first or one of the first to tender a plea before this court and at all times accepted responsibility.

5

## <u>Lack of Criminal History and Minimal Involvement</u>

The defendant, Sanan Atou, has no juvenile or adult criminal record and in fact has no prior contacts with law enforcement.  The defense would submit that Sanan Atou was this one and only occasion involved in the conspiracy by driving the narcotics across the boarder.  There is no evidence that Mr. Atou had ever, either prior to the day of his arrest or certainly after the day of his arrest, been involved in any illegal activity.  In fact one of the reasons Mr. Atou was limited in his ability to cooperate with the Government is because of his limited involvement.  He knew Mr. Petrus and his involvement but was involved little more than this one occasion which involved making some fast money for driving across the boarder after attending a family party in Canada.

Under the sentencing guidelines, a minimal participant is someone who played a single, limited role in the conspiracy. <u>United States v. Williams, 940 F.2d 176, 180 (6th Cir. 1991)</u>. The reduction for being a minimal participant in U.S. Sentencing Guidelines Manual § 3B1.2(a) is intended to cover only those defendants who are plainly among the least culpable participants in the group conduct, such as those who exhibit a lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others. This adjustment is primarily for someone who played a single, limited role in a very large organization. It is intended that the downward adjustment for a minimal participant will be used infrequently. U.S. Sentencing Guidelines Manual § 3B1.2 cmt. For purposes of applying a minor role adjustment under U.S. Sentencing Guidelines Manual § 3B1.2(b), a minor participant means any participant who is

less culpable than most other participants, but whose role could not be described as minimal. The defendant would submit that this would apply to him as his involvement falls within the definition of minimal and this Court can, nonetheless, consider it as a basis for departure.

<u>Possible Deportation, Separation from Family</u>

It is likely that the defendant, upon completion of any prison term imposed by this Court, will be subjected to deportation proceedings. In <u>United States v. Soto, 918 F.2d 882 (10th Cir. 1990)</u>, the 10th Circuit Court of Appeals held that a sentencing court could not consider a defendant's possible deportation as a basis for departing downward. "Because Congress clearly reserved drug-related deportation decisions to the Attorney General, a sentencing court shall not consider the possible deportation of an alien resident for a drug conviction in deciding whether to depart downward from the sentencing guidelines." Id. at 885 (citation omitted).

<u>Soto</u>, however, was overruled in part by the Supreme Court decision in <u>Koon v. United States, 518 U.S. 81, 109, 135 L. Ed. 2d 392, 116 S. Ct. 2035 (1996)</u>, limited overruling on other grounds noted by <u>United States v. Clough, 360 F.3d 967, 970 n.1 (9th Cir. 2004)</u>. <u>Koon</u> addressed the circumstances under which special factors may warrant departure from the sentencing guidelines. After <u>Koon</u>, a sentencing court, unless specifically prohibited by the sentencing guidelines, may consider any factor as a potential basis for departure. United States v. Fagan, 162 F.3d 1280, 1283 (10th Cir. 1998) (citing <u>Koon, 518 U.S. at 109</u>).

Therefore this Court can and should consider the very real possibility that the defendant will be required to not only complete his prison sentence and be separated from his family, but be deported to Iraq where he had no family, no ties to the community and would like be faced with a harsh and possible life threatening situation.

## CONCLUSION

Pursuant to 18 U.S.C. 3553(a), this court can consider a number of facts in determining the imposition of sentence including the fact that the defendant, Sanan Atou, was minimally involved in the offense and this was his one and only criminal act. Further, that other than this offense, Mr. Atou has no other police contact and has for most of his life worked at family run businesses and continues to support his mother and father. Moreover, Mr. Atou did attempted to cooperate when he met on several occasions with the Government and their agents and to the extent that he was able, provided relevant and useful information that led, in part, to the arrests of a number of individuals.

The defendant, unfortunately, felt intimidated and threatened from fully and completely cooperating and the Government, who in their discretion, have refused to file a 5K1.1 Motion for departure. Nevertheless, this Court can consider his attempts to cooperate, the fact that he immediately approached and met with the Government and was likewise one of the first to accept responsibility before this Court as a basis to depart. Finally, this Court can also consider the likely possibility of deportation and its effect not only on the defendant, Sanan Atou, by his family.

WHEREFORE, the Defendant, SANAN ATOU, by and through his attorney, SANFORD A. SCHULMAN, respectfully requests this Honorable Court to consider the aforementioned factors and any other or additional factors set forth in 18 U.S.C. 3553(a) in sentencing the defendant to a period of home confinement, treatment and supervised release for the reasons so stated herein.

Respectfully submitted,

SANFORD A. SCHULMAN P-43230
Attorney for Defendant: SANAN ATOU
500 Griswold Street, Suite 2340
Detroit, Michigan 48226
(313) 963-4740
Email: saschulman@comcast.net

Date: March 31, 2008

DEPARTMENT OF THE TREASURY
UNITED STATES CUSTOMS SERVICE

WAIVER OF RIGHTS UNDER 5(a) OF THE
FEDERAL RULES OF CRIMINAL PROCEDURE

Rule 5 (a) of the Federal Rules of Criminal Procedure provides in pertinent part as follows:

An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available federal magistrate judge or, if a federal magistrate judge is not reasonably available, before a state or local judicial officer authorized by 18 U.S.C. Section 3041.

I _Sanan Atou_ , hereby acknowledge that I have read and understand the portion of Rule 5(a) set forth above. I also acknowledge and understand that, under the terms of Rule 5(a), I have the right to be taken without unnecessary delay before the nearest available federal magistrate judge or appropriate local or state judicial officer.

With full and complete understanding of the rights afforded to me by Rule 5(a) of the Federal Rules of Criminal Procedure, I hereby voluntarily waive my right to be taken, without unnecessary delay, to the nearest available magistrate judge or local or state judicial officer.

I am knowingly and intelligently waiving my rights under Rule 5(a) for the purpose of assisting Special Agents of the United States Customs Service. When these efforts have been completed, I understand that I will be taken to the United States District Court in _Eastern District of Michigan_ for my initial appearance.

Signature     : _____

Printed Name : _Sanan Atou_

Date/Time    : _07/22/06   2/40_

Witness      : _____

Date/Time : _07/22/06   2140_

Customs Form 4611 (082197)

Law Offices Of
**SCHULMAN & ASSOCIATES, P.C.**
The Globe Building
407 East Fort Street
Suite 110
Detroit, Michigan 48226

Sanford A. Schulman

Legal Staff:
Christine Jaber, JD, MPA

Detroit Office: (313) 963-4740
Fax: (248) 671-0353

24901 Northwestern Highway
Suite 122
Southfield, Michigan 48075
(248) 539-1222

August 8, 2006

Daniel L. Lemisch
Assistant U.S. Attorney
211 W Fort St Ste 2001
Detroit MI 48226

RE:    SANAN ATOU

Dear Mr. Lemisch:

I am currently representing Sanan Atou who was stopped at the U.S. – Canada Border on July 22, 2006 and released.

He has not heard anything from the agent involved and asked me to inquire to arrange any type of voluntary surrender or proffer. I was just informed that the case agent is Chris Hudson who informed me that you are the assigned assistant United States attorney.

Mr. Atou is prepared to make an initial appearance and I would arrange a voluntary surrender. Also, I would like to know if your agent is available for a proffer and whether you would be willing to present a Kastigar letter.

Contact me when you get a chance so we can discuss theses issues further. Thank you in advance for your attention to this matter.

Very truly yours,

SCHULMAN & ASSOCIATES, P.C.

Sanford A. Schulman

SAS/jc
Enclosure
Cc:    Sanan Aton
       Michael Kiryakoza, Esq.

Law Offices Of
## SCHULMAN & ASSOCIATES, P.C.
The Guardian Building
500 Griswold Street
Suite 2340
Detroit, Michigan 48226

Sanford A. Schulman
Sarah E. Steslicki
Shannon Stevens

Of Counsel:
Staci D. Giske
Corbett E. O'Meara

Detroit Office: (313) 963-4740
Fax: (248) 671-0353

24901 Northwestern Highway
Suite 122
Southfield, Michigan 48075
(248) 539-1222

September 6, 2007

Daniel Lemisch
Assistanat U.S. Attorney
211 W Fort St Ste 2001
Detroit MI 48226-3220

RE:   UNITED STATES OF AMERICA vs. SANAN ATOU
      Case No. 07-20361

Dear Mr. Lemisch:

I had the opportunity to speak at length with Mr. Atou as it relates to his intentions to either proceed to trial or to plea.

It appears that he is prepared to plea as charged to the indictment without a Rule 11 Plea Agreement. He indicated that he is also willing to cooperate.

We all recognize that Mr. Atou was not deemed a very helpful witness during his initial proffer. Mr. Atou, apparently, was under intense pressure not to cooperate.

If you still want to schedule a follow up proffer, Mr. Atou will attend in the hopes that he may still be of assistance to your office and that consideration can be afforded to him in that regard.

I understand that new dates are forthcoming so I will leave it to you as to the best time to meet to discuss this further.

Very truly yours,

SCHULMAN & ASSOCIATES, P.C.

Sanford A. Schulman

SAS/jc
Cc:   Sanan Atou

10

AO 91 (Rev 5/85)  Criminal Complaint

# United States District Court

_____EASTERN_____          DISTRICT OF _____MICHIGAN_____

UNITED STATES OF AMERICA

V.

| | |
|---|---|
| D-1 | JIMIS ODISH |
| D-2 | JENY MAQI |
| D-3 | WASEM PETRUS |
| D-4 | MAHER SIKLAWI |
| D-5 | DARYL BYNUM |
| D-6 | ALAN ESTER |
| D-7 | KIMBERLY HUGHES |
| D-8 | DONZELL WILLIAMS |
| D-9 | THEODORE HOKE |
| D-10 | ALEXANDROS HUGHES |

(Name and Address of Defendants)

## CRIMINAL COMPLAINT

CASE NUMBER:

06-3 0463

FILED

CCT 6 - 2006

CLERK'S OFFICE
DETROIT

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. From on or about ___July 14, 2006 through on or about August 7, 2006___ in ___Wayne___ county, in the Eastern District of Michigan defendant(s) did, (Trace Statutory Language of Offense)

knowingly, intentionally and unlawfully conspire to distribute a Controlled Substance, to wit, 3,4-methylenedioxymethamphetamine (MDMA), and Possession with Intent to Distribute MDMA

in violation of Title _21_, United States Code, Section(s) _846 and 841(a)(1)_.

I further state that I am a(n) ___Task Force Officer - DEA___ and that this complaint is based on the following facts:

Official Title

      see attached affidavit

Continued on the attached sheet and made a part hereof:   _x_ Yes __ No

_____/s.
Signature of Complainant

Sworn to before me and subscribed in my presence,

__October 6, 2006_____   at   __Detroit, Michigan_____
Date                                          City and State

_____        _____
HONORABLE R. STEVEN WHALEN                Signature of Judicial Officer
Name & Title of Judicial Officer

D-1 Jimis ODISH
D-2 Jony MAQI
D-3 Wascm PETRUS
D-4 Maher SIKLAWI
D-5 Daryl BYNUM
D-6 Alan ESTER
D-7 Kimberly HUGHES
D-8 Donzell WILLIAMS
D-9 Theodore HOKE
D-10 Alexandros HUGHES

## AFFIDAVIT

I, George Tsouroullis, being duly sworn, declare and state:

1. I am a Task Force Officer (TFO) with the Drug Enforcement Administration ("DEA"), United States Department of Justice. I am currently assigned from the Sterling Heights Michigan Police Department (SHPD) to the DEA. I have been so employed by the (SHPD) since as an Officer/Detective since February 1997 and assigned to the DEA since April of 2002. I am currently assigned to the DEA Detroit Field Division Office, which is located in the Eastern District of Michigan, and have participated in numerous narcotics and money laundering investigations.

2. Since June 2006, I have participated in a joint US/Canadian drug trafficking investigation conducted by the DEA and the Royal Canadian Mounted Police (RCMP) into the activities of certain individuals involved in transporting and distributing the controlled substance, 3,4-methylenedioxymethamphetamine, also known as MDMA, and also known as "Ecstacy." I have authored and read reports involving this investigation from several participating law enforcement agencies. The result of this investigation has led to the seizure of over 50,000 pills of MDMA. The seized MDMA pills have been analyzed for controlled substance violations by the DEA laboratory in Chicago, Illinois and have

Your Honor,

On the day of my release Wasem Petrus pick me up from the Marriott hotel across from the tunnel. As soon I got in the car the first question he asked me was if I mentioned his name and if law enforcement agency had said anything about him. With what had just happened and just thinking how I don't need any more problems I told him I didn't say anything. He reapitdly stated that if I wasn't telling him the truth he swore on everything he would get someone to come after me and my family and he wouldn't rest until he thought I got my pay back.

He told me I needed to come up with $20,000 to pay his friend for the drugs because he was responsible for them. He said he would arrange for me to drop off the money to a purple Dodge Ram at the Windsor Casino parking lot and I had three months to come up with the money. I told him that this was his deal.

Him and his friend planned it so why should I be paying for it. He got very mad and went on about how he was planning on getting married and just bought a half of a million dollar party store and I already got caught so why should both of us go down. So he wanted me to pay for the drugs and take the blame for everything. I knew he was wrong but I knew that he could hurt me so I just agreed with everything.

Three months later Wasem called me yelling and saying that his house just got raided and he knows I said his name. He kept insisting on meeting up to talk so we did. When I met up with Wasem at first he was acting normal and just seemed upset. He asked if I took a polygraph test and what questions they asked me. I told him the questions they asked but I didn't tell him they asked about him. He started getting more angry and not even three minutes later, he stopped his car and told me that I messed up.

He said he knew I was lying and I was some how going to fix this and if I didn't that he had already arranged with a customer at his store to find and torture me and my family. I told him that he has it all wrong and I would never do that to him. So for this man who is now threatening My family and My life, I failed one question on the polygraph test that was "If the pills were for Wasem Petrus?" which made me fail my hole test.

I know that I made a big mistake already and I wasn't about to make an even bigger one and put My family and My life in jeopardy. From that day on I stayed away from him and everyone else I use to talk to. I knew that it was all his fault and if I never would have talked to him I wouldn't be in this situation. So I knew that I had to keep my distance to protect My family.

Sincerely

Sanan Atou

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

                Case No. 07-CR-20361-DT-02
                Hon. VICTORIA A. ROBERTS

vs.

SANAN ATOU,

      Defendant.

_____/

KATHRYN A. MCCARTHY
United States Attorney's Office
211 W. Fort Street
Suite 2001
Detroit, MI 48226-3211
313-226-9100
Email: kathryn.mccarthy@usdoj.gov

SANFORD A. SCHULMAN P-43230
Attorney for Defendant: SANAN ATOU
500 Griswold Street, Suite 2340
Detroit, Michigan 48226
(313) 963-4740
Email: saschulman@comcast.net

_____/

## PROOF OF SERVICE

SANFORD A. SCHULMAN, affirms, deposes and states that on the 31st

day of March, 2008, she did cause to be served the following:

1. Defendant, SANAN ATOU's Sentencing Memorandum;
2. Attachments;
3. Proof of Service

UPON:

KATHRYN A. MCCARTHY
United States Attorney's Office
211 W. Fort Street
Suite 2001
Detroit, MI 48226-3211
313-226-9100
Email: kathryn.mccarthy@usdoj.gov

By placing said copies in a properly addressed envelope with sufficient postage

fully prepaid, and placing in a U.S. Mail Receptacle.


FURTHER AFFIANT SAYETH NOT.

SANFORD A. SCHULMAN
Attorney for Defendant: SANAN ATOU
500 Griswold Street, Suite 2340
Detroit, Michigan 48226
(313) 963-4740
Email: saschulman@comcast.net